**In re the Marriage of Robin M. DRWECKI, Appellant–Petitioner,**

v.

**Richard G. DRWECKI, Appellee–Respondent.**

**No. 45A03–0203–CV–84.**

Court of Appeals of Indiana.

Jan. 29, 2003.

James A. Greco, Greco, Bishop & Kuechenberg, Merrillville, IN, Attorney for Appellant.

Michael W. Back, Crown Point, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Robin M. Drwecki ("Mother") appeals the trial court's order finding that Mother received excess child support from Richard G. Drwecki ("Father") and ordering that Father's over-payments be credited against future support payments. Mother raises a number of issues on appeal, which we reorder and restate as:

I. Whether the judgment entered against Mother exceeded the scope of the petition filed by Father;

II. Whether the trial court's July 28, 2000 order resolved all issues between the parties such that the court's order in July of 2001 was inappropriate without Father filing another petition to modify;

III. Whether Father voluntarily overpaid his support payments, making those overpayments a nonrefundable gift; and

IV. Whether the trial court erred when it ordered Father's overpayments to be credited against future support payments because over-payments may be credited against future payments only if fraud has occurred.

We affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were married. During the marriage they had two children, S., who was born on September 3, 1979, and B., who was born May 16, 1981. The trial court dissolved the marriage of Mother and Father on December 3, 1998. The divorce decree granted custody of both children to Mother. Because S. had begun college in the fall of 1998, Father was ordered to pay 80% of S.'s college expenses remaining after grants and financial aid. In addition, the decree required Father to pay $241.00 per week in child support, which was deducted from Father's paychecks via an Income Withholding Order. The decree did not include a provision for B.'s college expenses.

On July 15, 1999, Father filed a petition for contempt and to determine support and allocation of college expenses. In that petition, Father alleged, in pertinent part,

that 1) Mother refused to return $416.40 that had been inappropriately subtracted pursuant to the Income Withholding Order from Father's bonus checks; 2) Mother refused to provide information regarding grants, financial aid, and other assistance applied for and received by their children that he needed in order to determine the allocation of college expenses; and 3) a change in circumstances since the last order required the court to revisit these issues.

On July 28, 2000, the parties appeared before the court for a hearing. On September 25, 2000, an "AMENDED ORDER OF JULY 28, 2000" was entered, and it read, in pertinent part, as follows:

1. Certain funds have been taken from [Father's] bonus and profit sharing checks erroneously by his employer through the wage assignment. [Father] is to provide evidence of same and is entitled to credit against college expenses for [B.] for same. [Father]'s employer is ordered to cease withdrawing child support from bonus and profit sharing checks instanter.

\* \* \* \* \*

5. [S.] turns 21 years of age September 3, 2000 and is emancipated as of that date. Parties to exchange financial information instanter and proposed child support worksheets. Support being paid one-week in advance, said support modification shall be effective August 27th, 2000. Should there be any overpayment, [Father] shall be entitled to a credit against college expenses of [B.] for same.

\* \* \* \* \*

7. In open court [Mother] presented [Father] with the financial information on the college expenses of the parties' minor child [B.]. For school year 2000–2001 [B.'s] expenses after grants, etc., are approximately $6,237.00 per school year. [Mother] requests [Father] pay 100% of same through December 2000. Issue submitted to Court and court orders [Father] responsible for 80% of said approximate $6,237.00 for the 2000/2001 school year. [Father] shall be responsible for the same 80% for each school year thereafter unless modified by the court or by agreement of the parties.

(Appellant's App. at 23–24.)

On February 28, 2001, the parties appeared for a pre-trial conference before Christina J. Miller, Magistrate. At that hearing, counsel for both parties informed the court that the court's previous order had not resolved all issues that were pending. The parties discussed money erroneously deducted from Father's bonus checks and over-payment of child support occurring after S. was emancipated. On March 8, 2001, Magistrate Miller entered a temporary order setting Father's child support "at $157.96 per week commencing instanter." (*Id.* at 26.) The order also indicated that Mother and Father were "to exchange financial information and Court to review said support amount." (*Id.*) Mother was ordered to return to Father any excess amount she may receive "immediately upon receipt." (*Id.*)

The parties appeared for the final hearing on July 31, 2001. Subsequently, the court entered an "Order of July 31, 2001," which read, in pertinent part:

3. Court finds that the $157.50 of support previously ordered is a temporary order and should be adjusted according to [Father]'s income. The issue of whether or not [Father] is entitled to be reimbursed for monies taken from his bonus checks will be

determined by said support amount. Said support shall only be paid for the 18 weeks that the child is not on campus and said 18 weeks of support shall be divided into equal support payments per year paid via Income Withholding Order.

4. [Father] has overpaid support from the date of emancipation of [S.] until a larger amount of support was no longer taken from his check. Further, [Father] has overpaid support for the period of time that [B.] was on campus and [Father] was paying support year-round. [Father] shall be entitled to a judgment against Mother for the full amount of the overpayment of support minus the two credits that are listed below.

5. [Father] owes [Mother] $225.28 plus $149.00 for unreimbursed medical bills for [B.] for a total of $374.28. This amount shall be deducted from [Father]'s overpayment of support.

6. [Father] owes $2,466.79 for secondary school expenses for school years 1999 through 2000, summer school 2000 and calendar year 2000–2001. [Father] shall be given credit against the overpayment of support for this amount.

7. For any medical, dental, opt metrical [sic], pharmaceutical bills for which [Mother] is seeking reimbursement pursuant to any Order of this Court, [Mother] is required to serve upon [Father] a copy of those bills within 30 days of the receipt thereof.

8. There are no other outstanding issues between the Parties.

(*Id.* at 7–8.)

Then, on December 21, 2001, an "Agreed Order" was filed. That order read:

1. On September 3, 2000 this court emancipated [S.] leaving [B.] in the custody of [Mother].

2. This court has determined that support should have been $157.50 per week for [B.].

3. [Father] continued to pay via wage assignment $241.00 per week through February 20, 2001 while his petition to modify was pending. The court has determined there was an overpayment, as a result, but not determined the amount of overpayment in order to give counsel an opportunity to agree on same, if possible.

4. Said overpayment is in the amount of $83.50 per week ($241.00 actually paid minus $157.50 should have paid), over 25 weeks for a total **overpayment of $2,087.50** ($83.50 X 25 weeks).

5. [Father] further paid support of $157.50 year round while [B.] was on campus at Wabash college. This court has determined [Father] is entitled to a credit for overpayment for this as well. [B.] was at home 18 weeks per school year. Therefore, [Father] should have paid support for 18 weeks in 1999–2000, 18 weeks in 2000–2001. Therefore, [Father] has overpaid support for 68 of the 104 weeks that compromise [sic] school years 1999–2000 and 2000–2001 for a total **overpayment of $10,710.00** ($157.50 X 68 weeks).

[text missing from only copy of order provided]

the minor child is on campus so far in school year 2001–2002. That amount should be determine[d] by affidavit after [Father]'s employer ceases the support withholding, and [Father] is entitled to a credit for that amount.

7. [Father]'s support amount is based on an income of $65,000.00 (attached

worksheet exhibit "A"). [Father]'s income was $68,623.00 for 1999 (exhibit "B") and $63,106.00 for 2000 (exhibit "C"), for an average of $65,864.00. During that period additional support was taken from [Father]'s bonus checks in the amount of $873.52. Said bonus checks totaled $2,866.40 and were a part [Father's] income for the above years.

8. [Father] owes [Mother] $2,481.07 for medical bills and tuition etc. from this court[']s July 31, 2001 order which shall be deducted from his credit for overpayment of support.

9. Therefore, [Mother] was overpaid support from the bonus checks in the amount of $873.52. [Father] overpaid support in a total amount (excluding school year 2001–2002) in the amount of $11,191.95 ($2087.50 + $10,710.00 + $875.52—$2,481.07) and is given judgment in that amount in his favor and against [Mother].

10. The wage assignment shall cease and desist instanter and [Father] shall pay no further support or college expenses or medical bills until all his credit is exhausted.

(*Id.* at 31–32.) (Emphasis in original.) Mother appeals.

## DISCUSSION AND DECISION

1. *Did the Order Exceed the Scope of the Petition?*

■ The first issue is whether the trial court's judgment entered against Mother exceeded the scope of the petition filed by Father. According to Mother, "[t]he pleading filed by the Father did not raise, or assert, any issue that there should be a reduction in child support for the time that the parties' son [B.] was in college. Father only sought an allocation of college education expense." (Appellant's Br. at 11.) Consequently, according to Mother, be-

cause support was not at issue, the trial court did not have jurisdiction to enter a judgment for Father that included $10,710.00 for over-payment of support.

Child support decisions should be made pursuant to the Child Support Guidelines. *See* Ind. Child Support Guideline 2, cmt. (1998) ("Federal law now requires that the Indiana Child Support Guidelines be applied in every instance in which child support is established...."). Child Support Guideline 6 provides additional commentary to assist courts, practitioners and litigants when they apply the Guidelines. Within that commentary is a discussion of how parties should deal with extraordinary educational expenses, including expenses for post-secondary education. That discussion provides that "a reduction of the basic child support obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent." Child Supp. G. 6, cmt. (1998).

In accordance with that requirement, the Post–Secondary Education Worksheet provided at the end of the Guidelines contains two sections for computations. In section one, parties determine the educational expense obligation of the child and each parent. Then, in section two, parties determine the weekly child support obligation for each parent for the time that the student/child will live with the custodial parent.

In summary, both the Commentary and the Worksheet indicate that the allocation of college support expenses for a child who resides on a college campus necessarily entails a recalculation of the amount of child support due to the custodial parent. Neither party disputes that B. lives on campus at Wabash College. Consequently, the allocation of college expenses that Father requested automatically required a

determination of the amount of child support that Father owed Mother. Contrary to Mother's allegation, Father's pleading raised this issue and the trial court did not err when it addressed it.

### 2. *Were all Issues Previously Resolved?*

■ Second, Mother questions whether the trial court's July 28, 2000 order resolved all issues between the parties such that the court's order in July of 2001 was inappropriate without Father filing another petition to modify. However, the facts do not support Mother's claim that all issues had been resolved.

Paragraph five of the trial court's "AMENDED ORDER OF JULY 28, 2000" provided:

> 5. [S.] turns 21 years of age September 3, 2000 and is emancipated as of that date. *Parties to exchange financial information instanter and proposed child support worksheets.* Support being paid one-week in advance, said support modification shall be effective August 27th, 2000. Should there be any overpayment, [Father] shall be entitled to a credit against college expenses of [B.] for same.

(Appellant's App. at 21.) (Emphasis added.) This language suggests that the trial court's order settled a number of the disagreements between the parties but that neither the court nor the parties had settled the amount of child support that Father would pay after S.'s emancipation.

Moreover, even if that order could be construed as a final judgment from which Father should have appealed the trial court's failure to set an adjusted support requirement, and after which Father should have had to file a new petition to modify in order to have the trial court address the issue, Mother's actions before the trial court waived any error. On February 28, 2001, the parties appeared with counsel before Magistrate Miller and the following discussion occurred:

> The Court: Well what about the order I signed back in July, doesn't that take care of everything?
>
> [Father's Counsel]: No.
>
> [Mother's Counsel]: No.

(Tr. at 34.)

■ Mother's attorney agreed that the trial court's order of July 2000 did not resolve all of the issues between the parties. Thereafter, Mother's attorney took part in a discussion of the temporary amount of support Father should pay for B. until the parties could exchange worksheets and the court could set a final hearing on the petition to modify support. A party may not sit idly by at trial, not objecting to the procedures used in the trial court, and then, after an unfavorable outcome at trial, complain about those procedures for the first time on appeal. *Elbert v. Elbert,* 579 N.E.2d 102, 107 n. 2 (Ind.Ct.App.1991). By failing to object and by inviting the court to review the support issue, Mother waived any error. *See id.*

### 3. *Were Father's Over–Payments Voluntary Gifts?*

■ The third issue is whether Father voluntarily over-paid his support payments, such that the over-payments were a nonrefundable gift. Specifically, Mother argues:

> On February 28, 2001 the parties agreed that child support should be $157.96 per week. See Appendix, p. 25. The evidence showed that Father continued to make support payments of $241 per week, even though on February 28th it was reduced to $157.96. The continuance of paying the higher amount

of support must be viewed as voluntary and/or gratuitous.

In a December 21, 2001 order (See Appendix, p. 31) it was shown that Father had continued to pay $241 per week even after the February 28th order. The trial court then determined that he was entitled to a finding of overpayment of $83.50 for 25 weeks ($2,087.50). App. p. 31. The trial court then ordered this amount to be added to the other amounts ordered to be repaid and entered against Mother for $10,710.00.[1] Mother argues that Father voluntarily continued to pay the $241.00 per week and, as a matter of law, can not now ask for a refund.

(Appellant's Br. at 14–15.) (Footnote added.) Mother's argument fails because the Record does not support the facts upon which her argument is premised.

The trial court's order of December 21, 2001 indicates that Father paid support for S. during twenty-five weeks when he should not have. Mother argues that those twenty-five weeks occurred *after* the trial court reset Father's support payment to $157.96 on February 28, 2001. However, the court's order indicates that those twenty-five weeks occurred between September 3, 2000 and February 20, 2001— after S. was emancipated, but *before* the trial court reset Father's support payment to $157.96 on February 28, 2001. (*See* Appellant's App. at 31, paragraph 3.) Be-

cause the overpayments occurred during a time when a court order required Father to pay the greater amount and when the amounts were being deducted from his paycheck by an Income Withholding Order, we decline to construe these overpayments as "voluntary." *See, e.g., Matson v. Matson,* 569 N.E.2d 732, 734 (Ind.Ct.App. 1991) (holding overpayment resulting from inappropriate tax interception cannot be construed as voluntary overpayment of child support or as gratuitous).

### 4. *Can Father's Overpayments be Applied to Future Payments?*

■ The fourth issue is whether the trial court erred by determining Father was not obliged to pay additional support until his over-payment credit had been exhausted. First, Mother alleges that allowing Father to take a credit for his overpayments amounts to a retroactive modification of the support order, and Mother claims that a court may grant a retroactive modification only if fraud has occurred. Second, Mother claims that over-payments may be credited only against arrearages, not future payments.

■■ Indiana law prohibits courts from modifying child support orders retroactively. *Thacker v. Thacker,* 710 N.E.2d 942, 945 (Ind.Ct.App.1999). Consequently, as a general rule, "[a] court order modifying a support obligation may only relate back to

---

1. Mother claims that the $2,087.50 amount is included in the $10,710.00 amount. Ten thousand seven hundred ten dollars is the amount of child support that Father overpaid for time that B. was away from Mother's home at college. (*See* Appellant's App. at 31.) ("Therefore, [Father] has overpaid support for 68 of the 104 weeks that compromise [sic] school years 1999–2000 and 2000–2001 for a total **overpayment of $10,710.00** ($157.50 X 68 weeks).") (Emphasis in original.) The $2,087.50 overpayment addressed in this issue accumulated from twenty-five weeks of

paying an additional $83.50 a week for S.'s support after he was emancipated. (*See id.*) That $2,087.50 amount was later added to the $10,710.00 overpayment when the trial court calculated the grand total of Father's overpayment. (*See id.* at 32.) The two thousand dollar overpayment for S. was never part of or included in the ten thousand dollar overpayment for B. Consequently, Mother's claim that the trial court added the two thousand dollar amount to the other amounts and "entered against Mother for $10,710.00" is incorrect.

the date the petition to modify was filed and not an earlier date." *Id.; see also* Ind.Code § 31–16–16–6.[2]

■ Here, the trial court modified the amount of child support that Father should have paid to Mother after S. was emancipated on September 3, 2000 and the amount of child support that Father should have paid to Mother while B. was living away from Mother's house at Wabash College during the 1999–2000 and 2000–2001 school years. Father filed his petition to modify and allocate college expenses on July 15, 1999—prior to both S.'s emancipation and B.'s relocation for college. Because the trial court did not modify a support obligation that had accrued prior to the filing of Father's petition, the modification was not an impermissible retroactive modification.[3] *See, e.g., Moss v. Frazer,* 614 N.E.2d 969, 972 (Ind.Ct.App. 1993) (modification of support amount during time before petition was filed was erroneous, but modification of support amount during time after petition was filed and before order entered was not erroneous).

■ Moreover, as the trial court modified the support requirement retroactive to the time that the circumstances determining support changed, we cannot say that the trial court abused its discretion in deciding the date upon which the change became effective. *See, e.g., Haley v. Haley,* 771 N.E.2d 743, 752–53 (Ind.Ct.App. 2002) (holding trial court did not abuse its discretion in selection of retroactive date for increased support by non-custodial parent when date was after petition was filed and after change in circumstances justifying increased support).

The trial court appropriately reduced Father's obligation from the time the circumstances changed, and Father had continued to pay support at the amount ordered until the court modified the order. As a result, by the time the court finally modified the order, Father had overpaid thousands of dollars in support. If Father had accumulated thousands of dollars in child support arrearages, then the overpayments would have been applied to eliminate those arrearages. *See Beckler v. Hart,* 660 N.E.2d 1387, 1389 (Ind.Ct.App. 1996). However, Father's arrearages were much smaller than his overpayments. Therefore, the questions become whether and how Father may receive credit or be reimbursed for those over-payments.

In previous cases, we have held that "child support payments cannot be applied prospectively to support not yet due at the time of the overpayment." *Matson v. Matson,* 569 N.E.2d 732, 733 (Ind.Ct.App. 1991).

The rationale behind the rule is that it would be unjust for a non-custodial parent to voluntarily build up a substantial credit and then suddenly refuse to make support payments for a period of time. This would thwart the court's purpose of

---

**2.** Ind.Code § 31–16–16–6(b) provides:

A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due:
(1) after notice of the petition to modify the support order has been given either directly or through the appropriate agent to:
 (A) the obligee; or
 (B) if the obligee is the petitioner, the obligor; and
(2) before a final order concerning the petition for modification is entered.

**3.** Because the court's order did not amount to an impermissible retroactive modification of support, Mother's reliance on *Best v. Best,* 470 N.E.2d 84 (Ind.Ct.App.1984), which held that a trial court could retroactively vacate a previous college tuition order when the mother had misrepresented the amount of the tuition bills to both the father and the court, is misplaced.

providing regular, uninterrupted income for the benefit of the children. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.

*Id.* This rule suggests that Father cannot receive credit against future support payments.

However, the rationale underlying this rule does not fully apply here, where Father did not voluntarily build up a substantial credit. Rather, Father built up a substantial credit because he followed the court's previous order that required him to pay $241 per week in child support. If Father had failed to make those payments until the court modified the order, the trial court might have found him in contempt. *Cf. Kirchoff v. Kirchoff,* 619 N.E.2d 592, 597 (Ind.Ct.App.1993) (holding trial court did not abuse its discretion when it refused to hold a father in contempt for his failure to pay child support); *see also* Ind.Code § 31–16–12–6 ("If the court finds that a party is delinquent as a result of an intentional violation of an order for support, the court may find the party in contempt of court.").

Moreover, if we do not allow Father to recoup his excess payments made pursuant to the court order, then we will be encouraging non-custodial parents who are current on their support obligation and who believe they deserve a decreased support requirement to unilaterally decrease their support payments before the court orders such reduction. A better public policy is to encourage parents to stay current on their child support obligations and to follow the court's order until that order is modified; we should not encourage parents to violate court orders out of concern

that they will be unable to receive credit for the excess money they paid.

■ Finally, one reason we allow courts to modify the support obligation back to the date of the petition is because "[t]o grant modification of support only from the date of the court's order detracts from the purposes of the changed circumstances rule and serves to encourage and benefit dilatory tactics." *Kruse v. Kruse,* 464 N.E.2d 934, 939 (Ind.Ct.App.1984), *reh'g denied, trans. denied.* We have applied this reasoning in the context of a custodial parent attempting to increase a non-custodial parent's support obligation and have determined that a non-custodial parent should not be able to avoid an increased support requirement by delaying the hearing or order. *See, e.g., id.* The same logic leads us to conclude that custodial parents who are faced with an inevitable decrease in the non-custodial parent's support requirement should not, by delaying the entry of the order, be permitted to collect money not required for the support of a child. To hold otherwise would fly in the face of the changed circumstances rule and would encourage and benefit dilatory tactics in custodial parents who are served with a petition to decrease support.[4]

For all these reasons, we hold that Father should be able to recover the overpayments that Mother received. However, we limit our holding to the facts of this case, where 1) the petitioning parent has stayed current on his support obligation such that little arrearage exists; 2) the petitioning parent continued to follow the trial court's previous order despite a change in circumstances justifying a decrease in the support obligation; and 3) the trial court mod-

---

4. Our discussion is in no way intended to suggest Mother engaged in dilatory tactics herein.

ified support to a time after the petition was filed.

Nevertheless, we are concerned about one possible consequence of the trial court's order. The order appropriately relieves Father of his obligation to pay support for the eighteen weeks a year that B. stays with Mother. However, it also relieves Father of his obligation to pay B.'s expenses at Wabash College without resolving whether B. or Mother is responsible for Father's share of B.'s college expenses.

 A custodial parent acts as a fiduciary for a child when the parent receives child support payments. *Blume v. Stewart*, 715 N.E.2d 913, 917 n. 5 (Ind.Ct. App.1999), *trans. denied.* If a parent has received advance payments that are not gifts, the parent is required, as a fiduciary, to budget the money received to provide regular, uninterrupted support for the children in the future. *Id.* at 917. The custodial parent may not use those funds to satisfy any other debt. *Jenkins v. Jenkins*, 567 N.E.2d 136, 140 (Ind.Ct.App. 1991). The record before us does not indicate what happened to the excess support that Father was paying to Mother between the filing of the petition and the final order that adjusted Father's support obligation. Given the fact that Father filed a petition to modify and the fact that circumstances

had changed with both of the children, Mother should have anticipated a change in Father's support obligation and should have budgeted the money received to provide future support for B.[5] Consequently, we remand for the trial court to amend the order to indicate that, during the time Father is not required to pay, Mother is responsible for paying Father's share of B.'s college expenses.

## CONCLUSION

The issue of Father's child support obligation was raised by Father's petition and had not been resolved by the court's order in July of 2000. The extra $83.50 subtracted from Father's checks via the Income Withholding Order during the twenty-five weeks after S. was emancipated and before the trial court modified Father's support obligation cannot be construed as a voluntary overpayment that Father intended as a gift. The trial court did not abuse its discretion in modifying support retroactive to a date subsequent to Father's filing of his petition and concurrent with the change in circumstances justifying modification. However, the trial court should have clarified that Mother was responsible for paying Father's share of B.'s college expenses. Accordingly, we affirm and remand with instructions.[6]

---

5. This is especially true here, where the court's "Order of July 28, 2000" indicated that S. was emancipated as of September 3, 2000, and that Father's support obligation would be changed effective August 27, 2000, and where the Child Support Guidelines clearly indicate that allocation of college expenses for a child who lives on campus requires a decrease in the non-custodial parent's obligation to the custodial parent.

6. As a final matter, we note that in paragraph nine of the trial court's December 21, 2001 "Agreed Order," the court found that Father overpaid support in the amount of

$11,191.95. The parenthetical explanation includes reference to an $875.52 amount, which represents the amount of support inappropriately subtracted from Father's bonus checks. However, paragraph seven indicates that $873.52 was inappropriately subtracted from Father's bonus checks. The Record before us does not contain any information that would allow us to determine which of those amounts is correct. Accordingly, on remand, the trial court should determine which of those amounts is correct and then, if necessary, alter the total amount that Father overpaid in support.

Affirmed and remanded with instructions.

RILEY, J., and ROBB, J., concur.