**Laura A. (Dayhuff) CARTER,
Appellant–Petitioner,**

**v.**

**Steven E. DAYHUFF, Appellee–
Respondent.**

**No. 32A05–0410–CV–573.**

Court of Appeals of Indiana.

June 7, 2005.

and is consistent with the gravamen attendant to such waiver decision.

Deborah K. Smith, Thorntown, for Appellant.

Charles E. Hostetter, Jason P. Cleveland, Hostetter & O'Hara, Brownsburg, for Appellee.

## OPINION

CRONE, J.

### Case Summary

Laura A. (Dayhuff) Carter ("Mother") appeals an order modifying child support. We affirm in part and remand in part.

### Issues

Mother raises three issues, which we restate as follows:

I.  Whether the trial court erred in granting a modification of child support in favor of Steven E. Dayhuff ("Father") when Father's petition focused on college expenses;

II.  Whether the trial court erred in granting a retroactive modification of child support back to August 2003, when the older child began college; and

III.  Whether the trial court erred in failing to include a guideline worksheet and assessing child support without considering the costs Mother paid for health insurance or the visitation credit.

### Facts and Procedural History

Mother and Father's marriage was dissolved on January 4, 1991. During their marriage, they had two sons: Mark Dayhuff, born January 11, 1985, and Michael Dayhuff, born June 9, 1986. The sons have resided with Father since 1997. In March 1997, the court ordered Mother to pay weekly support of $150, which she has continued to pay. On April 9, 2003, Father filed a "Petition for Modification of Decree of Dissolution of Marriage." Appellant's App. at 14. In his petition, he requested that a modification hearing be held, that the court order Mother to "pay a portion of the college expenses," and that the court order Mother to pay Father's attorney fees and "all other relief proper." *Id.* at 74–75. When Father filed the modification petition, Mark, then a senior in high school, was planning to attend Indiana University–Purdue University Indianapolis ("IUPUI") and live at home with Father. Michael was a junior in high school.

Thereafter, the parties each sought continuances, and the court on occasion reset the case due to congestion. The parties attempted negotiations, but to no avail. Finally, on July 8, 2004, the court held a hearing, with evidence presented by counsel in a summary fashion. The evidence revealed that by the time of the hearing, Mark had graduated from high school and had attended IUPUI while living with Father. Michael had also finished high school and was planning to attend college. On the hearing date, it was clarified that Mark would be transferring to Indiana University and living in Bloomington,

Indiana, and that Michael would be starting at IUPUI and living off-campus rather than with Father. Father expressed surprise at their decisions and questioned whether he should have to help pay for off-campus housing if his sons could live at home. In addition, Father's counsel clarified that he was requesting a modification of child support and an order setting college expenses. *See id.* at 28.

Mother requested the court to find the children responsible for some portion of their education (noting the availability of student loans and employment), agreed to pay 61% of the remaining costs (with Father paying 39%), and asked the court to establish a reasonable expense for the sons' housing. Mother took issue with Father's request to modify child support retroactively, stressed that Father had requested only a college expense contribution and attorney fees in his petition, and pointed out that she had continued to pay $150 per week in support as previously ordered. *See id.* at 24, 48. The parties presented evidence regarding their salaries, insurance paid by Mother, Stafford Loan amounts, Mark's and Michael's employment, tuition, fees, and costs, etc. The court took the matter under advisement.

On July 12, 2004, the court issued its "Order on Petition to Modify," which states as follows:

> The court denies [Father's] request for a modification of child support retroactive to April 9, 2003. The court finds that both sons continued to live with [Father] after Mark began his freshman year at IUPUI in August of 2003. The court finds that [Mother] should pay child support for both sons from the first Friday in August of 2003 until the first Friday in August of 2004 in the amount of $264.00 per week. For this period, the parties should divide Mark's college expenses with Mark paying one-third of his tuition, books, fees and gasoline expenses to and from school (from school loans, grants or personal funds). The remaining balance should be paid with 61% to [Mother] and 39% to [Father]. [Mother] testified that she paid $1,760.00 on Mark's tuition for the first year, and she should be credited for this amount.

> Both boys will be enrolled in college beginning in August of 2004. Mark will be transferring to Indiana University at Bloomington to live on campus. Michael will attend IUPUI. He intends to live in an apartment instead of at home with [Father]. The parties agreed that both boys have the academic ability to succeed in college. Both are capable of and have been working part-time.

> Beginning with the second Friday in August of 2004, [Mother's] obligation to pay child support to [Father] terminates. The boys' college expenses for tuition, books, fees, room and board shall be divided as follows: each son shall pay one-third (from school loans, grants or personal funds); [Mother] shall pay 61% of the balance; and [Father] shall pay 39% of the balance. The parties shall determine and divide the amount Michael spends for apartment rental and food the same as the amount spent by Mark for room and board at IU, but not more that [sic] Michael is actually spending.

> This order is conditioned on the two boys maintaining a "C" grade point average. The court orders Mark and Michael to provide each parent with a copy of his grades within 10 days of receipt.

> Any prior order not mentioned herein remains unchanged. Each party shall pay his or her own attorney fees.

*Id.* at 20–22. Mother filed a motion to correct error, which the trial court denied.

## Discussion and Decision

### I. Modification of Child Support in Conjunction with Order of College Expenses

■ Mother urges that the trial court abused its discretion "in the retroactive award of child support in that the petition filed by [Father] did not request a modification of child support. The only relief requested by [Father] was assistance by [Mother] toward the expenses of college." Appellant's Br. at 9. Mother contends that she was denied advance notice that the issue of child support was going to be determined.

■ "A party is entitled to advance notice that an issue is going to be tried and determined by a court." *Sebastian v. Sebastian,* 798 N.E.2d 224, 228 (Ind.Ct.App. 2003) (citing *Glover v. Torrence,* 723 N.E.2d 924, 935 (Ind.Ct.App.2000)). That said, we have concluded:

> both the [child support] Commentary and the Worksheet indicate that the allocation of college support expenses for a child who resides on a college campus necessarily entails a recalculation of the amount of child support due to the custodial parent. Neither party disputes that B. lives on campus at Wabash College. Consequently, the allocation of college expenses that Father requested automatically required a determination of the amount of child support that Father owed Mother. Contrary to Mother's allegation, Father's pleading raised this issue and the trial court did not err when it addressed it.

*Drwecki v. Drwecki,* 782 N.E.2d 440, 445–46 (Ind.Ct.App.2003). Mother attempts to distinguish *Drwecki* by noting that Mark had plans to remain in Father's home rather than live on campus his first year and

that the "result of Father's non-plead request was not a reduction in child support but an increase of more than fifty percent." Appellant's Br. at 12.

The original dissolution decree in the case at bar apparently[1] did not specify how college expenses would be allocated. Hence, when Mark neared college age and was accepted to IUPUI, Father sought a determination regarding allocation of college expenses. He titled his petition as one for "Modification of Decree of Dissolution of Marriage." Appellant's App. at 74. Within his petition, Father specifically requested a modification hearing, an order that Mother pay a portion of the college expenses and Father's attorney fees, and "all other relief proper." *Id.*

At the hearing, the trial court confirmed that the issue was a "petition to modify." *Id.* at 24. In summarizing his position, Father's counsel made clear that Father filed his petition "asking to modify." *Id.* at 27–28.

> It's his position that filing a petition to modify with regards to college costs because the typical way to do it is through an income, uh, or a child support obligation worksheet that triggers a modification of child support as well. . . . And so, uh, he's asking for a modification of child support and asking the Court to set college expenses. The obligation of the parents—each parent and of the two sons to pay college expenses. And so that would necessitate a computation of child support from the date of filing of the petition[.]"

*Id.* at 28. In contrast, Mother's counsel stated:

> When it comes to the issue of the retroactiveness of the child support we have a couple of problems with that. First and foremost is the idea that back in April of

---

**1.** The original decree does not appear in the transcript, exhibits, or appendix.

2003 when [Father] filed his petition for modification he did not ask for an increase in child support. In fact he indicated that, uh, the oldest child had developed an aptitude for college, that [Mother] was able to share in the expense of college and asked upon requested relief that she pay a portion of the college expenses. He also did ask for reasonable attorney fees. Uh, he did not ask for an increase in child support, uh, and it has never been our position that the retroactiveness of a child support increase, uh, was even an issue for the Court. Uh, we do believe that the percentage of responsibility for college tuition was before the Court and has been for quite some time, however we do not agree that the Court should make any, uh, effort to try to figure out when should child support have changed and if so for which children.

*Id.* at 24.

■ We believe the confusion in this case results from the fact that oftentimes child support and college expenses are linked. Indeed, "[c]hild support payments may properly include expenses for the child's education under Indiana Code section 31–16–6–2[.]" *Sebastian,* 798 N.E.2d at 228; *see also Hay v. Hay,* 730 N.E.2d 787, 791–92 (Ind.Ct.App.2000) (noting that college expenses "are in the nature of child support"). Further, our legislature has delineated "the child's educational needs" as one of the relevant factors to consider when a trial court orders "any amount reasonable for support of the child." *See Ind.* Code § 31–16–6–1. More specifically, the Indiana Code provides:

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses;

(2) special medical, hospital, or dental expenses necessary to serve the best interests of the child; and

(3) fees mandated under Title IV–D of the federal Social Security Act (42 U.S.C. 651 through 669).

(b) If the court orders support for a child's educational expenses at an institution of higher learning under subsection (a), the court shall reduce other child support for that child that:

(1) is duplicated by the educational support order; and

(2) would otherwise be paid to the custodial parent.

Ind.Code § 31–16–6–2.

Our supreme court has stated that the provisions of Indiana Code Section 31–16–6–2 are "amplified" by the Indiana Child Support Guidelines, and that the "guidelines are to be utilized in the resolution of all petitions to determine or modify support." *Carr v. Carr,* 600 N.E.2d 943, 946 (Ind.1992) (citing prior Ind.Code § 31–1–11.5–12). In a section titled Extraordinary Educational Expenses, the commentary to Child Support Guideline 6 explains:

Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special

schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.

\* \* \* \* \* \*

b. Post–Secondary Education. The authority of the Court to award post-secondary educational expenses is derived from IC 31–16–6–2. It is *discretionary with the court to award post-secondary educational expenses and in what amount.* In making such a decision, the court should consider post-secondary education to be a group effort, and *weigh the ability of each parent to contribute to payment of the expense,* as well as the ability of the student to pay a portion of the expense.

If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall finanacial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense. \* \* \* \* \* \*

A determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. Room and board will also be included when the student resides on campus or otherwise is not with the custodial parent.

The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the basic child support obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent.

*A consideration of the foregoing factors is addressed in the Worksheet on Post–Secondary Education Expense which should be utilized in making a fair distribution of this expense.*

Child Support Guideline 6, Commentary (emphases added); *see also Million v. Swager,* 807 N.E.2d 140, 144–45 (Ind.Ct. App.2004).

In the case at bar, Father clearly viewed college expenses and child support as related. His view was reinforced when he utilized the Post–Secondary Education Worksheet ("PSEW"), which in turn directed[2] him to the Child Support Obligation Worksheet ("CSOW"). *See* Appellant's App. at 69–73 (Respondent's Exhs. A and B). Father's belief that college expenses and child support are connected is further supported by the fact that when, as here, a parent will be ordered to pay both child support *and* a portion of the child's college expenses, the trial court must consider full or partial abatement of the basic child support obligation. *See Stover v. Stover,* 645 N.E.2d 1109, 1111 (Ind.Ct.App.1995); *see also* Ind.Code § 31–16–6–2(b). Thus, the court was re-

**2.** A sample PSEW is included in the Guidelines. At the bottom of the page on which the sample is located is the following sentence: "Line J of section Two will be reflected in Section 7 of the Child Support Worksheet resulting in the Recommended Support Obligation."

quired to "consider" abatement of child support. Along with that consideration, the court must "weigh the ability of each parent to contribute to payment of the expense." Ind. Child Support Guideline 6, Commentary. In weighing the ability of each parent to contribute to payment of college expenses, it hardly seems an abuse of discretion to examine the parties' current salaries, obligations, etc. To the contrary, it would make little sense to use current income amounts for the apportionment of college expenses, but use 1997 income amounts for calculating the remaining child support obligation because it would not paint an accurate picture of the parties' respective incomes and responsibilities.

At the hearing, Mother stipulated to weekly income of $1500 and submitted pay stubs verifying that amount from March 2003 forward. Father used her $1500 figure in the worksheets he submitted as exhibits. Mother provided no alternative worksheets. The new CSOW factored in the college expenses and also revealed that Mother's current income justified a modification of child support from the $150 in weekly child support ordered in 1997. Partial/full abatement was determined unnecessary during Mark's first year of college because he lived with Father. However, full abatement of Mother's non-college-expense-related child support obligation was ordered once both Mark and Michael were in college and living outside of Father's home.

Regardless of how Father styled his motion, this case involved interrelated questions of child support and college expenses. Specifically, Father was seeking a modification of the previous child support order to take into account college expenses. *Cf. Hay,* 730 N.E.2d at 793–94 (father argued that the enrollment of the parties' child in a post-secondary education program was a substantial change in circumstances justifying a modification of support). Given these particular circumstances, Mother could not have been surprised that child support was addressed. Had child support not been addressed and Mother's support not been abated when both sons entered college, we are confident that Mother would be arguing otherwise. The court did not err in addressing child support and college expenses together.

### II. *Retroactive Modification*

■ In an argument closely tied to her first one, Mother states that she would agree that modifications might be retroactive to any point after the petition to modify is filed; however, in the case before the Court, Father was not seeking a modification of child support. Father was seeking a modification requesting college expenses and to that extent Mother would agree that the Court could retroactively modify the Court's previous Orders as they related to college. Mother would argue that it is an abuse of discretion to increase child support retroactively when the request for modification of child support is not before the Court.

Appellant's Br. at 13. She requests that we follow the logic of *Billings v. Billings,* 560 N.E.2d 553, 555 (Ind.Ct.App.1990), which stated: "when confronted with a petition to modify a support order, the trial court must consider the totality of the circumstances involved in order to ascertain whether the modification was warranted."

■ Having concluded in the previous section that Father sought a modification of child support to address college expenses, we note that "[r]etroactive modification of support is erroneous only if the modification purports to relate back to a date earlier than that of the petition to modify." *Reeves v. Reeves,* 584 N.E.2d

589, 594 (Ind.Ct.App.1992), *trans. denied.* Stated otherwise, a "trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter." *Haley v. Haley,* 771 N.E.2d 743, 752 (Ind.Ct.App.2002); *see also Naggatz v. Beckwith,* 809 N.E.2d 899, 903 (Ind. Ct.App.2004), *trans. denied,* and Ind.Code § 31–16–16–6(b).[3]

Father filed his petition for modification on April 9, 2003. Therefore, the trial court was free to make a modification of support payments effective on April 9, 2003, or any date thereafter. The court determined that Mother "should pay child support for both sons from the first Friday in August of 2003 until the first Friday in August of 2004 in the amount of $264.00 per week." Appellant's App. at 20–21. That is, while the trial court could have modified the amount of child support beginning on April 9, 2003, the court chose a date four months after Father filed the petition to modify. We see no abuse of discretion.

To the extent Mother argues that the award of retroactive support "seems espe-cially harsh in that the increase in support of $114 per week resulted in an arrearage of almost" $6,000, we are unmoved. *See* Appellant's Br. at 8. We agree that in the aggregate, $6,000 is a significant amount of money—even to someone with Mother's household income.[4] However, Mother had the benefit of the $6,000 during the year when it should have been allocated toward child support. In addition, we note that the increase of weekly child support from $150 to $264 was the result of a straight-forward application of the Guidelines. This was not a case where the trial court deviated from and ordered an amount well above the amount set forth by the Guidelines. Moreover, while it is impossible to say without the parties' income information for the period prior to March 2003, it is quite conceivable that Mother was the recipient of a windfall during whatever time period her income increased beyond its 1997 level, yet she continued to pay only $150 per week as per the 1997 order.[5]

### III. Guideline Worksheet, Health Insurance, and Visitation

Mother faults the trial court for not including an "incorporated guideline work-

---

3. Indiana Code Section 31–16–16–6(b) provides:

   A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due:
   (1) after notice of the petition to modify the support order has been given either directly or through the appropriate agent to:
   (A) the obligee; or
   (B) if the obligee is the petitioner, the obligor; and
   (2) before a final order concerning the petition for modification is entered.

4. According to the summarized evidence, Mother's weekly gross income was $1,604.79, Appellant's App. at 69 (Respondent's Exh. A), and Mother's present husband "works outside the home essentially at the same kind of work she does and makes essentially the same salary that she does." Appellant's App. at 27. By our calculations, Mother's annual household income exceeds $160,000. *Cf. Snow v. Rincker,* 823 N.E.2d 1234, 1239 (Ind.Ct.App., 2005) (reversing order that required father to "pay approximately 79 percent of his gross wages for that school year toward [child's] higher education expenses, leaving him with a mere $7,070 on which he can live.").

5. In addition, we point out that this is *not* a case of a trial court ordering "makeup payments." *See Snow,* at 1239 ("we cannot condone an order of 'makeup payments,' especially considering [mother] did not request of the trial court that [father] contribute to [child's] higher education expenses until shortly before her twenty-first birthday."). In the present case, Father filed his petition to modify college expenses/support the spring before the elder son's anticipated start of college. The one-year delay in resolving the issue was due to the various continuances by the parties and the court.

sheet" or setting out "specific findings regarding what facts were used to arrive at the child support award." Appellant's Br. at 15. She asserts that various items should have been included in the calculation of child support, but were not. Noting her costs for health insurance and the visitation credit, Mother contends, "[b]oth of these would have resulted in a reduction of child support, if a modification were warranted." *Id.* We agree with her regarding the health insurance argument but disagree as to the other contentions.

■ In *Scott v. Scott,* 668 N.E.2d 691 (Ind.Ct.App.1996), we quoted *Cobb v. Cobb,* 588 N.E.2d 571, 574 (Ind.Ct.App.1992) as follows:

In our review, we must start with the observation that our trial courts are required to make support orders in compliance with the guidelines and to spell out the reasons for any support orders which deviate from the guideline results. We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded. Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet.

*Scott,* 668 N.E.2d at 704. Furthermore, "we will read the judgment's provisions together in order to render the judgment effective." *Brown v. Brown,* 581 N.E.2d 1260, 1263 (Ind.Ct.App.1991). In so doing, we may look at the entire record, including, but not limited to, the complaint, findings, and evidence to ascertain the judgment's meaning and effect. *See id.*

■ Although it is true that the trial court did not attach a Guideline worksheet to its Order on Petition to Modify, for the most part, the trial court's reasoning is easily discerned from the wording of its order and the submissions of the parties. Father's CSOW calculated a recommended weekly support obligation of $264.39. The court ordered that Mother pay $264 per week until the second Friday in August 2004. Again, that amount represents a straightforward application of the Guidelines. That is, the parents' combined weekly adjusted income was $2,434.64. Pursuant to the support schedule, the appropriate weekly child support for two children of parents with that combined weekly income is $429. The $264 represents 61% of $429, that is, Mother's share. The court ordered that the child support obligation terminate in the fall of 2004 because around that time both sons would be in college and living outside of Father's home. Although Mother submitted no CSOW, she did provide pay stubs and figures regarding the costs of college for each son and agreed with the 61%–39% split. Accordingly, the trial court ordered that each son pay a third of the college expenses and that the parents split the remaining expenses, with Father paying 39% and Mother paying 61%. Because the court's reasoning is evident, we are able to review the support award to see if it comports with the Guidelines. *Cf. Scott,* 668 N.E.2d at 704–05 (remanding because order did not reveal basis for award either by specific findings or by incorporation of parties' worksheets); *see also Cobb,* 588 N.E.2d at 573–76 (reversing and remanding where order provided "no clue" as to how weekly child support was determined).

■ Trial courts are vested with broad discretion in ruling on child support. *Dillon v. Dillon,* 696 N.E.2d 85, 87 (Ind.Ct. App.1998). Indiana Code Section 31–16–8–1 provides that a trial court may modify a support order upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. We will reverse a decision regarding modification of child support only where it is clearly against the logic and effect of the

facts and circumstances that were before the trial court. *Hay,* 730 N.E.2d at 792. We do not reweigh the evidence or judge the credibility of the witnesses upon review; rather, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *See Scoleri v. Scoleri,* 766 N.E.2d 1211, 1215 (Ind.Ct.App.2002). The petitioner bears the burden of proving a substantial change in circumstances justifying modification. *Hay,* 730 N.E.2d at 793.

In *Hay,* the father argued that the enrollment of the parties' child in a post-secondary education program was a substantial change in circumstances justifying a modification of support. We agreed with this proposition in cases where the parties have not made provision for college expenses or have been unable to reach an agreement. We explained that in such cases, the trial court may require the parents to pay such expenses upon a petition to modify a support order, taking into consideration the child's ability and the parties' financial positions.

*Borth v. Borth,* 806 N.E.2d 866, 869–70 (Ind.Ct.App.2004). Similarly, "[u]pon review of a trial court's order regarding payment of college expenses, we reverse only if the trial court's decision is clearly erroneous." *Ratliff v. Ratliff,* 804 N.E.2d 237, 248 (Ind.Ct.App.2004).

Regarding health insurance, the Guidelines provide:

The parent who pays the weekly premium cost for the child(ren)'s health insurance should receive a credit towards his or her child support obligation *in most circumstances.* This credit is entered on the space provided on the Worksheet Line 7 and will be in an amount equal to that entered on the Worksheet Line 4B (See Support Guideline 3E Commentary entitled Additions to the Basic Child Support Obligation).

Ind. Child Support Guideline 3(G)(3) (emphasis added). Father argues that Mother offered no proof or documentation indicating the cost of the insurance premium she pays for the children. Appellee's Br. at 8. We disagree.

During the summary proceedings, Mother's counsel stated, "I would note that [Mother] does pay thirty-four dollars ($34.00) per week for health insurance and irregardless [sic] of the Court's ruling, uh, will continue to provide that for the boys as long as it's available to her and as long as they're considered full-time students." Appellant's App. at 46–47. Moreover, the pay stubs that Mother provided seem to support her contention regarding the $34.00 weekly insurance payment. *See id.* at 64. Notwithstanding that evidence, Line 4B of Father's worksheet lists the weekly health premium for children as "$0.00." Given the evidence presented, not including Mother's insurance payment in the calculation of support was a deviation from the Guidelines. The trial court may have had a reason for doing so, but did not explain it. That being the case, we must remand for either a recalculation or some explanation for not including the health insurance payment in the calculation. *See Cobb,* 588 N.E.2d at 573–76. In addition, on remand, the trial court should clarify what effect, if any, the entry of Mark and Michael into college should have on the health insurance payment.

Regarding credit for visitation, the Guidelines provide: "The court may grant the noncustodial parent a credit toward his or her weekly child support obligation (Line 6 of Worksheet) based upon the calculation from a Parenting Time Credit Worksheet (See Support Guideline 6 Commentary entitled Parenting Time and Child Support)." Ind. Child Support

Guideline 3(G)(4). Father's parenting time credit worksheet contained zeros in all relevant boxes. *See* Appellant's App. at 70. Hence, the CSOW lists "$0.00" under "Credit for parenting time." *See id.* at 69. As for parenting time, Father's counsel stated during the summary hearing: "Approximately two years ago the boys did not—discontinued visiting with their mother except for a very periodic basis and had no overnights. Within the past month that has changed, uh, obviously it had changed within the last ten minutes, uh, there had been more communications but still no overnights." *Id.* at 32. Mother cites no evidence to the contrary. Accordingly, we cannot say that the decision not to grant Mother a parenting time credit was clearly against the facts and circumstances before the trial court.

In summary, we affirm the modification of support in all respects except to the extent that it fails to credit Mother for payment of health insurance. The parties do not challenge Mother's breakdown of college costs or the 61%–39% split of college costs between Mother and Father. We remand with instructions to reconsider Mother's child support obligation consistent with this opinion.

Affirmed in part and remanded in part.

RILEY, J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurs in result with separate opinion.

I concur in the majority's result regarding whether Mother received notice that child support would be at issue alongside college expenses. The majority notes that "*oftentimes* child support and college expenses are linked." Op. at 565 (emphasis added). I believe this is one of those cases in which they were not necessarily linked.

When Father filed his petition for modification, both boys were living in Father's home, and the child who was soon to attend college intended to continue living in Father's home. Under those circumstances, college expenses could have been addressed without the need for considering a change in child support because all the same living expenses would have been incurred by Father for the boys' support. The majority determines that Father "clearly viewed college expenses and child support as related," *id.* at 566, and regardless of how he styled his motion, this case involves interrelated questions of child support and college expenses, so "Mother could not have been surprised that child support was addressed." *Id.* at 567. When it comes to notice of the issues that will be tried, what *Father* believed he was asking for is not as relevant as what *Mother* believed was being asked. Had circumstances remained the same, I would hold that Mother did not receive adequate notice from Father's petition that child support would also be considered.

By the time a hearing was held on the petition, however, one of the boys had already moved out of Father's home and the other was planning to, and a reconsideration of child support was warranted. If the trial court was to abate child support for the period after the boys moved from Father's home, it was also able to reconsider child support in total for the period after Father's petition was filed. That the child support Mother was obligated to pay for the retroactive period increased is a vagary of the particular circumstances of these parties. More specific notice ultimately would not have made a difference in the outcome because of the specific facts of this case, and I therefore concur in the majority's result that the trial court properly addressed both child support and col-

lege expenses, and I concur fully in the remainder of the opinion.