**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**CARL W. BUTLER**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY ROSER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1106-DR-502 |
| | ) | |
| JENNIFER ROSER, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY SUPERIOR COURT
The Honorable Max C. Ludy, Jr., Judge
Cause No. 38D01-0410-DR-27

**February 23, 2012**

**MEMORANDOM DECISION – NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

After the dissolution of Jeffery ("Father") and Jennifer ("Mother") Rosers' marriage, Father began paying child support. At a May 2011 hearing, Father requested a modification of his child support obligation because he had recently been incarcerated on charges unrelated to his child support obligation and faced a sentence of up to fifteen years. The trial court granted his request for modification and lowered his weekly child support obligation to $25. Father raises one issue for our review, which we restate as whether the trial court's modified child support obligation is in error because it is not based on Father's available income and assets. Concluding the trial court was correct to lower Father's obligation to the minimum support obligation, but that the minimum support obligation for two children is now $18.00, we remand to the trial court to revise Father's child support obligation to $18.00.

## Facts and Procedural History

Mother petitioned for dissolution of her marriage with Father in 2004, and a divorce decree was entered in August 2005. The trial court awarded Mother sole custody of two children born of the marriage and ordered Father to pay child support. In January 2011, Father filed a petition to modify child support, asking the trial court to review his ability to comply with his $72 per week child support obligation in light of his incarceration on charges unrelated to child support payment.

In May 2011, the trial court conducted a hearing. Father explained that he was incarcerated and faced a potential fifteen-year sentence, and he requested a modification of his child support obligation under Lambert v. Lambert, 861 N.E.2d 1176 (Ind. 2007),

because his income and assets were insufficient to allow him to comply with his child support obligation. After Father raised his argument, the trial court stated:

> Mr. Roser [sic] there's some, I don't know whether I'd call it misunderstanding or some general discussions that take place in the jails and prisons about the <u>Lambert</u> decision, and a lot of the individuals and some in there believe that that means that they don't have to pay any support while they are incarcerated. I don't read <u>Lambert</u>, [sic] to say that. What I read it to say is that it needs to be a minimal amount which doesn't create a large ongoing arrearage while you are incarcerated. As I said, a lot of people argue that that means $0.00. I don't believe that is the holding in the <u>Lambert</u> case . . . . So what the court is going to do is reduce your support . . . to $25.00 per week.

Transcript at 7. The trial court also had the following exchange with the State:

> The Court: I'm assuming he is not paying his support?
> [The State]: No. Well there has been a little paid earlier in the year, but nothing lately. No.
> The Court: If he is in jail for the next seven (7) years, I don't imagine you expect anything to be paid?
> [The State]: Correct.

<u>Id.</u> at 8. Father now appeals.[1]

<u>Discussion and Decision</u>

I. Standard of Review

The trial court is vested with broad discretion in making child support determinations. <u>Carter v. Dayhuff</u>, 829 N.E.2d 560, 569 (Ind. Ct. App. 2005). Child support orders may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable" or upon a showing that "a party has been ordered to pay an amount in child support that differs by more than twenty

---

[1] Subsequent to the filing of his appellate brief, Father filed a motion for leave to amend his brief, stating his desire to remove a phrase from the brief. We hereby grant Father's motion and have redacted the line from Father's Statement of the Case.

percent (20%) from the amount that would be ordered by applying the child support guidelines" and that "the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed." Ind. Code § 31-16-8-1(b). The petitioner bears the burden of proof, and we will reverse a trial court's grant or denial of a request for modification of child support only where it is clearly against the logic and effect of the facts and circumstances before the court. Carter, 829 N.E.2d at 569-70. We do not reweigh the evidence or judge the credibility of the witnesses upon review; rather, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. at 570. However, questions of law are reviewed de novo. See Bellows v. Bd. of Comm'rs of Cnty. of Elkhart, 926 N.E.2d 96, 111 (Ind. Ct. App. 2010).

## II. Father's Child Support Obligation

Father argues our supreme court's decisions in Lambert and Clark v. Clark, 902 N.E.2d 813 (Ind. 2009), require a trial court to calculate the child support obligation of an imprisoned parent based on the actual income and assets available to the parent. He argues the trial court abused its discretion when it modified his obligation to $25 per week because it did not base this amount on his actual income and assets.

In Lambert, the father was ordered to pay $277 per week in child support as part of a provisional agreement. 861 N.E.2d at 1176-77. Prior to the final hearing on the dissolution, the father was sentenced to a period of incarceration for convictions unrelated to child support payment. Id. at 1177. Despite his incarceration, the trial court ordered as part of the decree of dissolution that he continue to pay the $277 per week in

4

support, concluding his incarceration resulted from his own voluntary actions and thus it was proper to continue his child support obligation despite his incarceration. Id. Our supreme court disagreed, holding:

> [I]ncarceration does not relieve parents of their child support obligations. On the other hand, in determining support orders, courts should not impute potential income to an imprisoned parent based on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent.

Id. In Clark, our supreme court extended the holding of Lambert to apply to petitions to modify a child support obligation based on the incarceration of an obligated parent. 902 N.E.2d at 815.

In its discussion in Lambert, our supreme court laid out the approaches taken by other states regarding the calculation of an incarcerated parent's child support obligation. 861 N.E.2d at 1177-79. Some states follow an absolute justification rule, where imprisonment absolutely justifies modifying or suspending child support. Id. at 1177-78. Others conclude it is appropriate to impute pre-incarceration income to the non-custodial parent, likening criminal conduct to voluntary unemployment, which is not typically a basis for modification of a child support obligation. Id. at 1178. Last, at least one state, Nebraska, disallowed the imputation of pre-incarceration income for an incarcerated non-custodial parent's child support modification determination because the parent usually does not have the earning capacity to comply with such a child support obligation. Id. at 1178-79 (citing State v. Porter, 610 N.W.2d 23 (Neb. 2000)). Instead, Nebraska imposed the minimum child support obligation as provided for in the state's guidelines, but it also noted that because income does not consist solely of wages, the possibility of higher

5

support obligations should be left open.  Id. at 1179.

In examining the different approaches, the court in Lambert contrasted voluntary unemployment with incarceration, stating "[t]he choice to commit a crime is so far removed from the decision to avoid child support obligations that it is inappropriate to consider [voluntary unemployment and incarceration] as identical."  Id. at 1180.  In addition to this distinction, the court discussed the best interests of children in child support cases and noted that the child support system is meant to serve an economic purpose, not a punitive one.  Id.  The court cited sociological research findings that the existence of large support orders, especially large arrearages, leads to more non-custodial parents failing to meet their support obligations.  Id.  Further, the court cited data revealing that because wages are often garnished in an effort to collect child support payments, allowing arrearages to grow while a parent is incarcerated discourages employment after release.  Id. at 1181.

> The ultimate lesson to be drawn from this research is that when high support orders continue through a period of incarceration and thus build arrearages, the response by the obligor is to find more methods of avoiding payment.  To the extent that an order fails to take into account the real financial capacity of a jailed parent, the system fails the child by making it statistically more likely that the child will be deprived of adequate support over the long term.

Id.

Our supreme court ultimately adopted Nebraska's approach.  Id.  The supreme court stated, "[u]nlike the absolute justification rule, the non-imputation approach allows courts to comply with the Guidelines by imposing at least the minimal support order as provided by Ind. Child Support Guideline 2."  Id. at 1181.  At the time Lambert was

decided, Guideline 2 provided: "For obligors with a combined weekly adjusted income, as defined by these Guidelines, of less than $100.00, the Guidelines provide for case-by-case determination of child support, normally within a range of $25.00-$50.00 weekly." Ind. Child Support Guideline 2 (2007). Thus, a minimum child support obligation was set at $25.00. Now, however, Guideline 2 provides:

> The court should consider the obligor's income and living expenses to determine the maximum amount of child support that can reasonably be ordered without denying the obligor the means for self-support at a minimum subsistence level. The court may consider $12.00 as a minimum child support order; however, there are situations where a $0.00 support order is appropriate.

Thus, pursuant to Lambert, the minimum child support obligation for one child is now $12.00. For parents with child support obligations for more than one child, a schedule is included with the Indiana Child Support Guidelines. Pursuant to the schedule, the minimum obligation for two children is $18.00. While there may be circumstances where an obligor's obligation should be ordered below the minimum amount provided in Guideline 2 and the adjoining schedule, Father already had an opportunity to present evidence to that effect and did not do so. Further, Guideline 2 is clear that an obligor's means to support himself is important in determining a child support obligation. This point is important in this circumstance because an incarcerated parent need not worry about self-support.

Father argues the trial court abused its discretion by modifying his support obligation to $25.00 per week without basing the amount on his actual income or assets. We agree, but only as to the amount. Because Father did not show that the minimum child support obligation is inappropriate, his obligation should be reduced to $18.00. We

7

also note that in <u>Lambert</u> the supreme court concluded that an incarcerated obligor's child support obligation should be based on his or her available income and assets in part because it is possible he or she has assets or income exclusive of wages that could provide a means of fulfilling a support obligation. 861 N.E.2d at 1181-82. Such assets or income could necessitate a child support obligation substantially greater than the minimum child support obligation, even for an incarcerated obligor. However, here the State and Mother already had an opportunity to present evidence to that effect at the hearing on Father's petition to modify his support obligation and did not do so. Therefore, Father's child support obligation should be revised to $18.00.

## Conclusion

Pursuant to Guideline 2, Father's modified child support obligation should have been reduced to $18.00. Neither party presented evidence that would deviate Father's child support obligation from the minimum support obligation. Thus, we remand to the trial court to revise Father's child support obligation consistent with this opinion.

Remanded.

NAJAM, J., and VAIDIK, J., concur.