Gary KICKEN, Appellant–Petitioner,

v.

Michelle KICKEN, Appellee–
Respondent.

No. 78A01–0301–CV–22.

Court of Appeals of Indiana.

Nov. 14, 2003.

Alison T. Frazier, Eckert Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Luther T. Garcia, Esq., Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Gary Kicken (Father) challenges the trial court's December 18, 2002 order (the December Order) regarding his visitation of his two minor children, K.R.K. and K.C.K. The sole issue on review is, did

the trial court demonstrate actual bias towards Father and abuse its discretion by not finding Michelle Kicken (Mother) in contempt of a previous court order?

We affirm.

The facts most favorable to the December Order demonstrate that Father and Mother's marriage was dissolved in February 2000. The trial court awarded Mother and Father joint custody of the children, with Mother having primary physical custody.[1] Pursuant to the settlement agreement incorporated into the dissolution decree, Father was to have liberal and reasonable visitation. If a disagreement arose, however, visitation automatically reverted to the Switzerland County Visitation Guidelines (Switzerland Guidelines), Switzerland County being the Indiana County where Mother lived at the time of the dissolution. At some point after the dissolution's entry, the parties reverted to the Switzerland Guidelines.

Mother subsequently moved to Dayton, Ohio, approximately 110 miles from Father's home. On Father's motion, the trial court reviewed the current visitation provision, and on February 23, 2001, issued a revised visitation order finding the geographic change in Mother's residence combined with Father's work schedule as a pilot made the Switzerland Guidelines impractical. The trial court ordered the

Indiana Parenting Time Guidelines (Indiana Guidelines) be followed, with the exception that Father could select one seventy-two-hour period every fourteen days to visit with his daughters, in lieu of one evening per week and alternating weekends as provided in the Indiana Guidelines. The seventy-two hour visitation schedule was possible because at the time of the revised order, Mother homeschooled both children.

On January 28, 2002, Father filed an Affidavit for Contempt alleging Mother had violated terms of the February 23, 2001 order by denying Father visitation. At the hearing on Father's contempt citation, Mother and Father presented detailed accounts of the other's alleged noncompliance with the Indiana Guidelines and violation of visitation orders.[2] Thereafter, the trial court issued a June 13, 2002 order, finding Mother in contempt. The order allowed Mother to purge her contempt by permitting Father an additional ten days of visitation over the children's summer break in 2002. Additionally, Mother was ordered to pay attorney fees of $500.

Shortly thereafter, Mother filed a Motion to Correct Error, a Petition to Modify, and a Motion for Change of Judge. Judge Hoying was selected as special judge and a hearing was set on the pending motions.

---

1. The Honorable Ted R. Todd presided over the case from October 1999 through July 2002. At that time, due to Mother's motion for change of judge, the Honorable Fred H. Hoying assumed jurisdiction. Judge Hoying rendered the December Order at issue here. Two hearing transcripts are provided in the record of this matter—one from Judge Todd's April 10, 2002 hearing and the other from Judge Hoying's December 11, 2002 hearing. The only transcript cited in this opinion is from Judge Hoying's December 11, 2002 hearing.

2. During their respective testimonies, Mother and Father provided numerous examples of the acrimonious nature of their relationship, including: (1) Father's repeated requests for the local police to perform "welfare checks" on Mother when Mother's phone went unanswered and she had the children; (2) Mother's use of obscenities towards Father's new wife during a visitation exchange; (3) visitation exchanges taking place in public parking lots with the police present; and (4) "logs" maintained by Mother and Father detailing the other's perceived violations of visitation, including being 10–15 minutes late to visitation exchanges.

Before the hearing, Father filed three Affidavits for Contempt Citations and a Motion for Emergency Hearing, and Mother filed two Affidavits for Contempt Citations and a Motion for Emergency Order.

A hearing on all pending matters occurred December 11, 2002. The trial court interviewed both minor children *in camera* and then heard testimony from Mother and Father. Before the conclusion of Father's testimony, the trial court informed the parties:

> Well I hate to tell you people this, but I already know what I'm going to do so you either, can either keep plugging away here but I know what I am going to do and I don't see where much is going to change my mind.

*Transcript* at 42. The trial court then lectured both parents on its disapproval of their past practices, and admonished them to adjust their attitudes and refocus on their children. The trial court also informed the parties that even though previous orders by the trial court (Judge Todd) had not worked, "That history changes today." *Transcript* at 60. The trial court spent the remainder of the hearing attempting to craft a workable visitation schedule for Mother and Father and to impress upon them the necessity to put aside their differences for the benefit of their children. Father did not object to the trial court's limitation of his testimony.

The December Order resulting from the hearing stated that the Indiana Guidelines would continue to govern visitation with the exception that Father could select two weekends out of every four for visitation, regardless of whether they were consecutive, in order to accommodate his work schedule. In addition, the trial court ordered that visitation exchanges were to occur at the homes of the parties, that Father should have phone contact with the children each mid-week at approximately 7 p.m., that communication between Mother and Father should be by phone and not by letter, and that Mother was to provide copies of family photographs and videos to Father at his expense. The trial court found neither party in contempt.

Father appeals the trial court's December Order. Specifically, Father contends that the trial court demonstrated actual bias towards him and deprived him of his due process rights when it limited the presentation of his contempt case against Mother.

First, we stress that our review of visitation and custody modifications is for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind.1993). We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* at 179 (citing Ind. Trial Rule 52(A)).

The reason for this deference to trial courts was explained in *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965) (footnote omitted):

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the in-

ferences therefrom to be different from what he did.

*Id.* Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* (citations omitted). Further, the law presumes that a judge is not biased or prejudiced in the matters that come before the court. *Flowers v. State,* 738 N.E.2d 1051 (Ind.2000), *reh'g denied.* A court's judgment will not be reversed unless the record shows actual bias and prejudice against the petitioner. *Id.* To succeed on a bias claim the petitioner must establish that the judge's actions crossed the bounds of impartiality and actually prejudiced the petitioner's case. *Id.*

■■■ Finally, a determination of whether a party is in contempt of court is a matter committed to the trial court's sound discretion and we will reverse a trial court's decision in that regard only for an abuse of discretion. *Piercey v. Piercey,* 727 N.E.2d 26 (Ind.Ct.App.2000). An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a trial court's contempt determination, we will neither reweigh evidence nor judge witness credibility. *Id.* " 'Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. Unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed.' " *Id.* at 31–32 (quoting *In re Marriage of Glendenning,* 684 N.E.2d 1175, 1179 (Ind. Ct.App.1997)). To hold a party in contempt for violating a court order, the trial court must find that the party acted with

"willful disobedience." *Piercey v. Piercey,* 727 N.E.2d at 32.

■■■ In the instant case, Father contends that the trial court demonstrated actual bias towards him through its statement, "Well I hate to tell you people this...." *Transcript* at 42. Our review of the record, however, does not reveal bias against Father on the part of the judge that presided over this hearing. Father attempts to support his contention through reliance on *Brokus v. Brokus,* 420 N.E.2d 1242 (Ind.Ct.App.1981), where this court found that a father did not receive a fair and impartial hearing based on the trial court's comments, including:

> You can't take two or three year old girls away from their mother. I don't see what the end result is, without building up a lot of attorney fees, two different states. The outcome eventually will be to dissolve the marriage ... and I'm sure she's going to obtain custody of the twins[.]

*Id.* at 1249. Holding that the statement demonstrated the trial court's improper presumption that young daughters must remain with their mother, this court reversed the grant of custody to the mother. *Id.*

The record in the instant case demonstrates no improper presumption in Mother's favor that influenced the trial court's December Order. The comment Father cites does not evince a favorable preference for Mother based on gender, nor does it demonstrate bias towards Father. To the contrary, the trial court's comment is directed to both parents and is a segue way into the trial court's frank commentary on Father and Mother's past behavior in an effort to help the parties settle their differences and move forward. Moreover, a review of the transcript reveals pointed comments to Mother:

To unilaterally make a decision that the children should not see their father because you don't think you saw them enough. Ma'am that's not fair[,] you had them, you have them all year. I've complimented you. You've done a nice job with these children, but goodness gracious ma'am, think beyond yourself[.] [T]hese little girls deserve to know and love their daddy.

*Transcript* at 44–45. The trial court praised Father as well:

There is no question your girls love you sir and you're a good man. I do not argue that at all. I wish I could get half the fathers to care as much about their children as you care about yours, a third would be wonderful. That's not the problem we ordinarily face here.

*Transcript* at 44. We find no support for Father's claim that the trial court was actually biased against him.

■ Additionally, while Father contends he was deprived due process rights, we again stress the deference and latitude granted to our trial courts in their handling of family law matters. In this case, the trial court interviewed both minor children, heard Mother's direct and cross-examination testimony, as well as partial testimony from Father. Based on the acrimony displayed by the parties, the extensive contempt citations filed by both parties, and the three-year time period of the visitation dispute, we cannot say that the trial court denied Father due process by limiting repetitive and cumulative testimony and instead attempting to fashion a resolution which aimed for cooperation rather than confrontation.

■ It was to this same end that the trial court declined to hold either party in contempt. As the trial court stated:

I don't want either of you held in contempt. I don't like that. It's like me

saying to you, you're wrong which is of course a victory for you and it' [sic] able for you to say ha, ha, I was right. I don't want to do that to you or her.

*Transcript* at 50. Additionally, the question of whether Mother was in contempt was complicated by a protective order Father filed against Mother in February 2002 after a particularly contentious visitation exchange. While both parties acknowledged attempts to have the protective order set aside and the trial court concluded that the order was improperly entered and not in effect, the record clearly demonstrates confusion among the parties, and their attorneys, about the order's impact and import. Based on the trial court's desire to provide Mother and Father with a clean slate coupled with confusion regarding the protective order, we cannot say it was an abuse of discretion for the trial court to not find Mother in contempt.

In summary, our review of the record reveals a trial court's attempt to improve upon an acrimonious family situation. Rather than criticizing, we commend the trial court's efforts to impress upon Mother and Father the larger picture: the wellbeing of their children. It is precisely because of difficult situations such as this that we accord great deference to a trial court's custody and visitation rulings, because the trial court is able to speak with the parties, in addition to the children, and observe the dynamics of their interactions. Mindful of that deference and the reasons underlying it, we cannot say that the December Order demonstrated an abuse of discretion or that Father demonstrated actual bias on the part of the trial court.

Judgment affirmed.

RILEY, J., and SULLIVAN, J., concur.