Stephanie DEEL, Appellant–Petitioner,

v.

Conrad DEEL, Appellee–Respondent.

No. 73A01–0912–CV–606.

Court of Appeals of Indiana.

Aug. 5, 2010.

Stephanie Deel, Greenwood, IN, Appellant pro se.

Henry Y. Dein, Indianapolis, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Stephanie Deel ("Mother") and Conrad Deel ("Father") are divorced and have one child together, Ashley Deel. After Ashley graduated from high school, Mother peti-

tioned for college expenses and a modification of support. Mother also sought to collect on an arrearage that had accrued under the original support order. Mother challenges several aspects of the trial court's judgment, including the effective date of the modification, calculation of college expenses, calculation of the arrearage, and attorney fees. We conclude that the trial court erred in calculating Father's arrearage. Therefore, we affirm in part, reverse in part, and remand.

### Issues

Mother raises six issues, which we reorder and restate as:

I. Is the trial court's finding that Mother was not seeking reimbursement for 2008 college expenses clearly erroneous?

II. Did the trial court miscalculate Father's arrearage by counting tax intercepts twice?

III. Is the trial court's finding that Ashley started first grade in 1994 clearly erroneous?

IV. Did the trial court abuse its discretion by not awarding interest?

V. Is the trial court's finding that Mother agreed to a modification retroactive to July 17, 2008, clearly erroneous?

VI. Did the trial court abuse its discretion by not awarding Mother the full amount of her attorney fees?

### Facts and Procedural History

Mother and Father's marriage was dissolved on June 14, 1992. The dissolution decree ordered Father to pay child support in the amount of $800.00 per month. The payments were to be reduced to $350.00 per month when Ashley began first grade. Father was also ordered to provide medical insurance for Ashley and a clothing allowance of $350.00 per year.

Ashley graduated from high school in May of 2007 and began attending IUPUI the following school year. On May 8, 2008, Mother filed a "Petition to Modify Support Order to Include Educational Expenses," as the original dissolution decree did not provide for college expenses. Appellant's App. at 5. On July 10, 2008, the trial court held a hearing solely on the topic of college expenses. At that hearing, Mother indicated that she was not seeking reimbursement for expenses from the 2007–2008 school year; she was seeking only a prospective change. On July 15, 2008, the trial court entered an order providing that Ashley was to pay $2,000.00 per year toward her college expenses, that Father was to pay 82% of the remaining expenses, and that Mother was to pay 18%.

On July 17, 2008, Mother filed another petition to modify the support order. A hearing was held on September 29, 2009. At the beginning of the hearing, the parties informed the trial court that they had agreed that the monthly support should be modified to $358.00. However, they disagreed as to the effective date of the modification.

Mother testified that Father had not paid all the support due under the original order and had never paid the clothing allowance. She stated that she was seeking interest on the arrearage. She acknowledged that in 2009, she received a federal tax intercept of $4,767.00 and a state tax intercept of $145.00. Mother testified that she had provided medical insurance for Ashley for several years. She also offered into evidence billing statements from three different attorneys who had represented her in this matter.

Father acknowledged that he had never paid Mother directly for clothing, but he

claimed that he had taken Ashley shopping for clothes and had spent "well above" $350.00 per year. Tr. at 96. He acknowledged that there had been several years that he had not paid for Ashley's medical insurance. He admitted to having an arrearage beginning in 2007, but he claimed that he had paid in full prior to that. Both parties presented evidence concerning Ashley's college expenses and how they had been paid for.

On October 16, 2009, the trial court issued an order on all pending matters. The court determined that Father should pay $358.00 in monthly child support, retroactive to July 17, 2008, the date the second petition for modification was filed. The payments were to terminate on Ashley's twenty-first birthday. The court determined that Father was not in arrears on the monthly child support obligation. The court concluded that Father had spent at least $350.00 a year on clothing, but owed Mother $10,528.00 for medical insurance. The court found that Father was delinquent in his share of the college expenses for the fall 2009 semester and ordered him to pay $2,516.68 to Mother. Based on the delinquent medical and college expenses, the court found Father in contempt and ordered him to pay $3,000.00 to Mother's attorney. Mother now appeals *pro se.*

**Discussion and Decision**

■ The trial court entered findings of fact and conclusions thereon. *See* T.R. 52. Therefore we apply a two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Khaja v. Khan,* 902 N.E.2d 857, 866 (Ind.Ct.App. 2009).

The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them.

A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment.

*Id.* (quoting *Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App.2005)).

### I. 2008 College Expenses

■ The trial court's order states:

The Court notes that Mother stated Father had paid his share of college expenses for 2008 in her pleading of March 4, 2009. The Mother has testified there were $3,026.12 in fees incurred for the fall 2009 semester. The Court orders Father to reimburse Mother 82% of this amount, $2,516.68. The Court orders the parents to pay their respective share of Ashley's tuition expenses directly to the school in the future.

Appellant's App. at 57.

Mother argues that the trial court's finding that Father paid his share of the 2008 college expenses is clearly erroneous. At the hearing on July 10, 2008, Mother indicated that she was not seeking reimbursement for expenses from the 2007–2008 school year; she was seeking only a prospective change. Mother has not included in the record before us the March 4, 2009 filing referenced in the court's order. Therefore, the record is unclear as to whether Mother sought reimbursement for expenses from the fall 2008 semester. We cannot say that the trial court's finding is clearly erroneous. *See Miller v. State,* 753 N.E.2d 1284, 1287 (Ind.2001) (stating that the appellant "has the responsibility to present a sufficient record that supports his claim in order for an intelligent review of the issues").

## II. Tax Intercepts

■ The trial court's order included the following calculation of Father's alleged arrearage:

**Father's Obligation**

| | | |
|---|---|---|
| June 1992—August 1994 | $800.00/month × 27 months = | $21,600.00 |
| September 1994—July 2008 | $350.00/month × 167 months = | 58,450.00 |
| July 17, 2008—July 1, 2009 | $358.00/week × 50 weeks = | 17,900.00 |
| | | $97,050.00 |

**Father's Payments**

| | | |
|---|---|---|
| Direct payments | June 1992—April 2008 | $76,000.00 |
| Payments through Clerk | May 2008—July 2009 | 17,762.00 |
| | | $93,762.00 |
| Tax Intercept | | 4,887.00 |
| | | $98,649.00 |

Appellant's App. at 56. Thus, the trial court found that Father had actually overpaid. At the outset, we note the trial court made a mathematical error in calculating Father's obligation. The total amount of his obligation should be $97,950.

Mother argues that the calculation is erroneous because the tax intercepts were already included in the "Payments through Clerk" category, and the trial court also credited Father separately for the tax intercepts. Mother testified that she received tax intercepts of $4,767.00 and $145.00 in 2009. The appendix contains copies of the clerk's records of Father's payments. The "Total Case Distributions" reflected in these records is $17,762.00. This total includes one payment of $4,767.00 and one payment of $145.00 in

2009. Appellant's App. at 65–66. Therefore, we conclude that the trial court erroneously credited Father twice for the tax intercepts.[1]

### III. Age That Ashley Entered First Grade

■ Mother asserts that the trial court erroneously found that Ashley entered first grade in 1994 instead of 1995. The significance of this issue is that Father's monthly support decreased from $800.00 per month to $350.00 per month when Ashley started first grade. As shown above, the trial court used September 1994 as the date when Father's support obligation decreased. If Ashley entered first grade in 1995, that would add an additional $5,400.00 to Father's obligation.[2]

---

1. Father contends that the record is unclear regarding the tax intercepts. Mother's testimony was clear that she received two payments: one for $4,767.00 and one for $145.00, and these same figures appear in the clerk's record. Together, these payments total $4,912.00. The trial credited Father with $4,887.00, a difference of $25.00. It is not clear how the trial court reached this figure. However, we note that while Mother hired attorneys to represent her on some aspects of the case, she also enlisted the aid of the Shelby County prosecutor. The prosecutor's website explains the Tax Intercept Program and states, "The state will retain a minimal fee, never greater than $25, for an intercepted tax refund." www.shelbyprosecutor.com/support.htm (last visited July 12, 2010). This may explain the slight discrepancy between the trial court's figures and the evidence. At any rate, Father does not contend that the payments of $4,767.00 and $145.00 were regular payments made directly to the clerk as opposed to payments made via tax intercepts.

2. ($800.00–$350.00) × 12 = $5,400.

At the September 29, 2009 hearing, Mother testified that Ashley started first grade in 1995. Father did not challenge this assertion at trial, nor has he responded to Mother's argument on appeal; therefore, she need only make a *prima facie* showing of error. *See Khaja*, 902 N.E.2d at 868 (when an appellee fails to respond to an issue raised in the appellant's brief, the appellant need only establish *prima facie* error). As the evidence supports only a conclusion that Ashley started first grade in 1995, we conclude that she has met that standard. Adjusting the trial court's calculations to correct the three errors that we have identified, we conclude that Father has an arrearage of $9,588.[3]

### IV. Interest

■ Mother argues that she should have been awarded interest on the child support arrearage. Indiana Code Section 31–16–12–2 provides:

> The court may, upon a request by the person or agency entitled to receive child support payments, order interest charges of not more than one and one-half percent (1½ %) per month to be paid on any delinquent child support payment. The person or agency may apply for interest if support payments are not made in accordance with the support order....

We have recognized that an award of interest pursuant to this statute is similar to an award of prejudgment interest. *Caldwell v. Black*, 727 N.E.2d 1097, 1099 (Ind. Ct.App.2000). However, the statute modifies the common law of prejudgment interest in several ways. *Id.* Specifically, while awarding prejudgment interest is not generally a matter of discretion, the statute grants the trial court discretion to award interest on a support arrearage and to determine the rate.[4] *Id.*

The trial court's order did not address Mother's request for interest, presumably because it found that Father was not in arrears. As we have concluded that Father in fact has an arrearage, we remand to the trial court to reconsider Mother's request for interest.

### V. Effective Date of Modification

■ The trial court's order states, "The parties stipulated at the hearing that the current child support should be $358.00 retroactive to the July 17, 2008 date the Petition To Modify Support Order was filed." Appellant's App. at 54–55. Mother correctly notes that the parties stipulated only to the amount, not the effective date. At the hearing on September 29, 2009, Mother argued that the modification should be made retroactive to May 8, 2008, the date that she filed her first petition for modification. Father argued that it should be made retroactive to July 17, 2008, the date of the second petition, because the first petition dealt solely with college expenses.

■ "A trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter." *Becker v. Becker*, 902 N.E.2d 818, 820 (Ind.2009). "'The general rule in Indiana is that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of the petition to modify.'" *Id.* (quoting *Donegan v. Donegan*, 605 N.E.2d 132, 133 n. 1 (Ind. 1992)).

We have previously held that a petition requesting college expenses may also place

---

3. $97,950 + $5,400–$93,762.00 = $9,588.00

4. The statute also requires a specific request for interest. Father contends that Mother made no such request, but the record shows otherwise. *See* Tr. at 68.

child support at issue, such that the child support obligation may be made retroactive to the date of the petition for college expenses. *Carter v. Dayhuff,* 829 N.E.2d 560, 567–68 (Ind.Ct.App.2005); *Drwecki v. Drwecki,* 782 N.E.2d 440, 445–46 (Ind.Ct. App.2003). When the child resides outside the home of the custodial parent, it is clear that child support should be recalculated. *See Drwecki,* 782 N.E.2d at 445–46 ("[B]oth the [Child Support Guidelines] Commentary and the Worksheet indicate that the allocation of college support expenses for a child who resides on a college campus necessarily entails a recalculation of the amount of child support due to the custodial parent.").

Ashley, however, lives with Mother. Nevertheless, we have found that adjustment of child support is still appropriate when the custodial parent requests college expenses for a child who is living at home. In *Carter v. Dayhuff,* the parties had two sons who lived with Father as of 1997. Mother was ordered to pay weekly support of $150.00. On April 9, 2003, Father filed a "Petition for Modification of Decree of Dissolution of Marriage." *Carter,* 829 N.E.2d at 562. The petition requested a modification hearing, that Mother be ordered to pay a portion of the college expenses, and "all other relief proper." *Id.* By the time the hearing was held, the older son had finished his first year of college, and he had lived with Father during that time. At the hearing, Father clarified that he was seeking a modification of support as well as an order addressing college expenses. The trial court determined that Mother's child support obligation should increase to $264.00 per week as of the first Friday in August of 2003. Each son was to pay a third of his college expenses, with Mother paying 61% of the balance and Father paying 39%.

On appeal, Mother argued that the trial court erred by increasing her child support obligation and making it retroactive because Father's petition addressed only college expenses. We disagreed. We noted that child support and college expenses are interrelated issues and that educational expenses may be included in child support. *Id.* at 565. The Child Support Guidelines indicate that in awarding college expenses, the court should weigh the ability of each parent to contribute. *Id.* at 566. When a parent is ordered to pay both child support and a portion of the child's college expenses, "the trial court must consider full or partial abatement of the basic child support obligation." *Id.* Father had completed a Post–Secondary Education Worksheet, which in turn directed him to the Child Support Obligation Worksheet. *Id.*

We acknowledge that there is less evidence in this case that the parties viewed child support and college expenses and child support as interrelated issues. Mother's original petition requested college expenses and did not explicitly refer to child support. At the July 10, 2008 hearing, the parties limited their presentation of evidence to the issue of college expenses. Thereafter, Mother filed a petition specifically requesting a modification of support. However, in *Carter,* we found that recalculating child support when college expenses are requested generally should result in a more accurate picture of the parties' ability to contribute to the child's needs:

> In weighing the ability of each parent to contribute to payment of college expenses, it hardly seems an abuse of discretion to examine the parties' current salaries, obligations, etc. To the contrary, it would make little sense to use current income amounts for the apportionment of college expenses, but use 1997 income amounts for calculating the remaining child support obligation be-

cause it would not paint an accurate picture of the parties' respective incomes and responsibilities.

*Id.* at 567. Therefore, we conclude that recalculating child support when college expenses are requested generally will promote fairness and the best interests of the child.

In this case, the trial court erroneously found that the parties had agreed to an effective date of July 17, 2008. We conclude that it would be within the trial court's discretion to order that the child support obligation be modified effective May 8, 2008. The trial court is in the best position to determine whether May 8, 2008 should be the effective date, or whether a later date is more appropriate in light of the facts of this case. Therefore, on remand, we instruct the trial court to reconsider the effective date of the modification.

### VI. *Attorney Fees*

 In an action to modify support, the trial court has discretion to award attorney fees, and its decision will be reversed only for an abuse of that discretion. *Whited v. Whited,* 859 N.E.2d 657, 665 (Ind.2007).

> In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court, however, need not cite the reasons for its determination.

*Id.* Mother submitted documentation showing that she had incurred $13,077.33 in attorney fees, but the trial court awarded her only $3,000.00. Mother cites several reasons why she feels that this award is inadequate, including that Father was found in contempt, the income disparity between the parties, and the delays caused by Father's numerous requests for continuances. Father offers no argument concerning the award of attorney fees except to note that such an award is discretionary. As we have determined that Father in fact has an arrearage and that the trial court should reconsider other issues, we conclude that it would be appropriate for the trial court to reconsider the attorney fee award as well once it has finally resolved all issues in accordance with this opinion.

### Conclusion

Mother has not shown that the trial court abused its discretion by finding that she was not seeking reimbursement for college expenses incurred in 2008. However, she has shown that the trial court erred in calculating Father's arrearage, which we have determined to be $9,588.00. On remand, the court should reconsider whether Mother is entitled to interest on the arrearage. The court should also reconsider the effective date of the child support modification and the award of attorney fees.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and DARDEN, J., concur.