**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DEBRA LYNCH DUBOVICH**
Levy & Dubovich
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF C.C.M.: | ) | |
| | ) | |
| M.M., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1205-JP-230 |
| | ) | |
| V.K.H., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary A. DeBoer, Special Judge
Cause No. 64C01-0602-JP-501

**December 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

M.M. (Father) and V.K.H. (Mother) are the parents of a young daughter, C.M. Father appeals from the trial court's order concerning parenting time, as well as its ruling on Father's numerous petitions for rule to show cause and Mother's request for attorney fees. Father presents the following restated issues for our review:

1. Did the trial court improperly delegate the authority to modify the parenting-time schedule to a parenting-time coordinator?

2. Did the trial court abuse its discretion in declining to hold Mother in contempt?

3. Did the trial court abuse its discretion in ordering Father to pay a portion of Mother's attorney fees?

We affirm in part, reverse in part, and remand with instructions.

C.M. was born out of wedlock to Mother in September 2005. Pursuant to an agreed order entered on May 19, 2006, paternity was established in Father and Father was awarded parenting time and ordered to pay child support. Pursuant to another agreed order entered on February 22, 2007, Father's child support obligation was increased and Mother was ordered to provide Father with reasonable notice of C.M.'s medical appointments. Yet another agreed order was entered on May 12, 2009, pursuant to which Mother and Father agreed to share joint legal custody of C.M., with Mother having primary physical custody and Father receiving expanded parenting time as outlined in the order.

Despite the entry of three agreed orders, the record reveals that the relationship between Father and Mother has been highly contentious and combative throughout the entirety of the paternity proceedings. On December 15, 2009, Father filed a Petition for Modification seeking a decrease in his child support obligation and an order giving "Father

2

and Mother equal decision making control concerning [C.M.'s] education, health care, religious, and extracurricular activities." *Appellant's Appendix* at 54. On the same date, Father filed a Petition for Rule to Show cause seeking to have Mother held in contempt for various alleged violations of the agreed orders, including denying and interfering with Father's parenting time, failing to consult Father concerning C.M.'s educational and extracurricular activities, failing to notify Father in advance of C.M.'s medical appointments, refusing to send changes of clothes with C.M. for her overnight visits with Father, and failing to return a baseball cap belonging to the child. Thereafter, Father filed six additional petitions for rule to show cause seeking to have Mother held in contempt. In these petitions, he cited many of the same issues set forth in the December 15 petition, as well as some new alleged violations.

On August 23, 2010, Mother filed a Verified Petition for Modification of Custody and Parenting Time and for Rule to Show Cause seeking sole legal custody of C.M. and requesting that Father's parenting time be reduced to that set forth in the Indiana Parenting Time Guidelines. Mother also sought to have Father held in contempt, alleging that Father had not paid child support as ordered, and that he "continue[d] to file frivolous pleadings in this case." *Id.* at 66. On September 14, 2010, Father filed another Petition for Modification, this time seeking "primary care" or, in the alternative, "sole custody." *Id.* at 69.

Due to the appointment of a custody evaluator and delays in receiving the evaluator's report, a hearing on these motions was not held until April 18, 2012. Thereafter, on April 26, 2012, the trial court issued a detailed, twenty-page order addressing issues of custody,

3

parenting time, child support, and contempt. In the order, the trial court set a parenting-time schedule and appointed a parenting-time coordinator. The trial court's order gave the parenting-time coordinator the authority to revise the trial court's parenting-time schedule "to accommodate summer vacation, holidays, extended parenting time and extra-curricular activities." *Id.* at 34.

With respect to contempt matters, the trial court determined that Mother was in contempt for failing to notify Father of some of C.M.'s medical appointments and that Father was in contempt for failing to pay child support as ordered. The trial court did not impose sanctions on either contempt finding, although it did calculate Father's outstanding child support arrearage and order him to begin making payments thereon. The trial court declined to hold Mother in contempt for the other allegations set forth in Father's rules to show cause. The trial court also ordered Father to pay a portion of Mother's attorney fees. The trial court deferred ruling on Father's request to modify child support, however, because Father had not yet filed his business and personal income tax returns for 2010 and 2011, and the trial court concluded that this information was necessary to allow it to accurately calculate Father's income.[1] Father now appeals.

As an initial matter, we note that Mother did not file an appellee's brief. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes

---

[1] Because the trial court declined to rule on this issue, Father is not, as he claims, appealing from a final judgment. *See* Ind. App. R. 2(H)(1) (providing that a "final judgment" is one which "disposes of all claims as to all parties"); *Bueter v. Brinkman*, 776 N.E.2d 910, 912-13 (Ind. Ct. App. 2002) (holding that a final judgment is one that puts an end to the particular case and reserves no further question for future determination). Nevertheless, because the trial court ordered Father to pay Mother's attorney fees and to begin making payments toward his support arrearage, we have jurisdiction over this matter as an interlocutory appeal as of right from an order for the payment of money. *See* Ind. App. R. 14(A)(1); *Rowe v. Ind. Dep't of Correction*, 940 N.E.2d 1218 (Ind. Ct. App. 2011), *trans. denied*.

prima facie error. *Aiken v. Stanley*, 816 N.E.2d 427 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" *Id.* at 430 (quoting *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). However, this rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. *State v. Moriarty*, 832 N.E.2d 555 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. *State v. Combs*, 921 N.E.2d 846 (Ind. Ct. App. 2010).

Additionally, where, as here, the trial court enters findings of fact *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Julie C. v. Andrew C.*, 924 N.E.2d 1249 (Ind. Ct. App. 2010). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. *Id.* In reviewing the trial court's findings, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom, and we will not reweigh the evidence or judge witness credibility. *Id.* We will affirm a general judgment on any legal theory supported by the evidence. *Id.*

1.

First, Father argues that the trial court erred by delegating authority to modify the parenting-time schedule to the parenting-time coordinator. "When reviewing a trial court's determination of a parenting time issue, we grant latitude and deference to the trial court and will reverse only when the trial court abuses its discretion." *In re Paternity of C.H.*, 936

5

N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied*. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Ind. Code Ann. § 31-14-14-2 (West, Westlaw current though 2012 2nd Reg. Sess.) provides that "[t]he court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." (emphasis supplied). In *Matter of Paternity of A.R.R.*, this court addressed a situation in which a trial court had delegated discretion over the frequency and supervision of a child's visits with her mother to a court-appointed family therapist. 634 N.E.2d 786 (Ind. Ct. App. 1994). This court reversed, concluding that

> a modification of visitation may not be granted absent a determination by the court that the modification would serve the best interests of the child. No statute permits this determination to be delegated to a caseworker, probation officer, guardian, or other authority, and to do so would be to undermine the safeguards inherent in reserving to a detached and impartial court the task of weighing the many considerations relevant to visitation. By authorizing the [therapist] to determine when supervised visitation is no longer needed and when the frequency of visitation may be increased, the court impermissibly endowed that agency with judicial powers.

*Id.* at 789; *see also Carmichael v. Siegel*, 754 N.E.2d 619 (Ind. Ct. App. 2001) (holding that a court may not delegate decisions concerning the frequency and availability of visitation to other parties).

In this case, the trial court's order set forth a parenting-time schedule, but gave the parenting-time coordinator the authority to revise that schedule "to accommodate summer vacation, holidays, extended parenting time and extra-curricular activities." *Appellant's Appendix* at 34. The trial court's order also provided that "[i]t is not the intention of the

Court to bind [the parenting-time coordinator] to the parenting time guidelines in any way. He is free to construct a workable schedule that is best overall for [C.M.]." *Id*. at 35. The order also indicated that the trial court encouraged Mother and Father to attempt to reach agreements on parenting-time issues, but "if the parties are unable to reach an agreement on an issue, [the parenting-time coordinator] shall determine the outcome of the issue for purposes of acting as an Order of this Court." *Id.*

Based on this language, we conclude that the trial court impermissibly delegated decision-making authority with respect to the frequency and availability of parenting time to the parenting-time coordinator. Although the court set forth a parenting-time schedule, it granted the parenting-time coordinator broad latitude to revise that schedule, and indicated that the parenting-time coordinator was not bound by the Indiana Parenting Time Guidelines. Indeed, the order went so far as to grant the parenting-time coordinator the authority to resolve parenting-time disputes between the parties, and provided that the parenting-time coordinator's resolution of those issues would have the force of a court order. Under these facts and circumstances, we conclude that Father has satisfied his burden of establishing prima facie error in this regard. We therefore reverse the trial court's parenting-time order and remand for a redetermination of that issue in accordance with this opinion.

2.

Next, Father argues that the trial court abused its discretion by declining to hold Mother in contempt for various alleged violations of court orders. The determination of whether a party is in contempt of court is a matter within the trial court's discretion. *Van*

7

*Wieren v. Van Wieren*, 858 N.E.2d 216 (Ind. Ct. App. 2006). An abuse of discretion occurs when the decision is contrary to law or against the logic and effect of the facts and circumstances before the court. *Kicken v. Kicken*, 798 N.E.2d 529 (Ind. Ct. App. 2003). In reviewing a trial court's contempt ruling, we will consider only the evidence and reasonable inferences supporting the judgment, without reweighing the evidence or judging the credibility of witnesses. *Id.*

"In general, contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005). There are two types of contempt—direct and indirect. *In re Paternity of M.F.*, 956 N.E.2d 1157 (Ind. Ct. App. 2011). Direct contempt involves actions occurring near the court that interfere with the court's business and of which the judge has personal knowledge. *Id.* Indirect contempt, on the other hand, involves actions outside the trial court's personal knowledge. *Id.* Willful disobedience of any lawfully entered court order of which the offender had notice constitutes indirect contempt. *Id.*

Father points to various trial court findings concerning Mother's actions and claims that, based on these factual findings, the trial court was required to hold Mother in contempt. Specifically, Father notes the trial court found that Mother: (1) failed to communicate with Father about which schools C.M. should attend;[2] (2) "restricted Father's access to [C.M.]," and (3) "failed to provide Father with information to which he was entitled[.]" *Appellant's*

---

[2] Father claims that the trial court found that Mother's failure to communicate with Father regarding the schools C.M. should attend was "contemptuous." *Appellant's Brief* at 11. The finding Father cites in support of this argument, however, contains no such statement. Rather, the finding states that Mother's failure to invite Father to C.M.'s preschool or kindergarten registration was *not* contemptuous behavior. *Appellant's Appendix* at 23.

*Appendix* at 27. Father also notes that Mother was held in contempt for failing to notify him in advance of C.M.'s medical appointments, but seems to argue that the trial court was required to impose sanctions for Mother's contempt in this regard and erred by not doing so.

To the extent the evidence establishes that Mother willfully violated court orders, we cannot conclude that the trial court abused its discretion in concluding that contempt and/or sanctions are not warranted in this case. We acknowledge Father's reliance on *DeBoer v. DeBoer*, 669 N.E.2d 415 (Ind. Ct. App. 1996), for the proposition that failure to hold a party in contempt where there is uncontroverted evidence of willful disobedience of a court order is reversible error. The overarching principle in family law matters, however, is that we grant latitude and deference to the trial court. *Heagy v. Kean*, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007), *trans. denied*. To that end, this court has declined to substitute its judgment for that of the trial court with regard to the necessity of contempt findings or sanctions, particularly in the context of acrimonious child custody proceedings like the one at hand. *See Van Wieren v. Van Wieren*, 858 N.E.2d 216; *Kicken v. Kicken*, 798 N.E.2d 529.

In *Van Wieren v. Van Wieren*, the father alleged that the trial court erred in refusing to hold the mother in contempt because she admitted to some of the acts he alleged were contemptuous. This court agreed that the trial court would have acted within its discretion in finding the mother in contempt; however, the court held that "we will not *require* the trial court to find a party to be in contempt where . . . the court has found that those actions fall short of necessitating contempt sanctions." *Van Wieren v. Van Wieren*, 858 N.E.2d at 223 (emphasis in original). Similarly, in *Kicken v. Kicken* we affirmed trial court's decision not

9

to hold the mother or father in contempt, in part because the decision was an attempt to "improve upon an acrimonious family situation" by providing the parties with a "clean slate[.]" 798 N.E.2d at 534. Rather than finding error, "we commend[ed] the trial court's efforts to impress upon Mother and Father the larger picture: the well-being of their children." *Id.*

Here, the trial court made extensive findings regarding Father's allegations of contempt. The court acknowledged that Mother had not always complied with orders that required her to communicate with Father—specifically, she did not provide Father with advance notice of C.M.'s medical appointments and not discussed schools with him. The trial court found Mother to be in contempt for her failure to provide advance notice of C.M.'s medical appointments because a previously entered agreed order expressly required her do so. The trial court concluded, however, that Mother's contempt did not warrant sanctions, in part because of the contentious relationship between Mother and Father. Specifically, the court found that "[g]iven the parties' inability to agree on even the most simple things, the Court finds that having both parties at each and every appointment would be stressful for all and potentially harmful to [C.M.] to witness their lack of civility toward each other." *Appellant's Appendix* at 23. Moreover, although the trial court did not find Mother to be in contempt for failing to communicate with Father about what schools C.M. should attend before enrolling her, it expressly noted that it did not condone her behavior in this regard.

The trial court's rulings on the contempt petitions reflect its desire to put the parties' past disagreements to rest without creating more hostility between them. We believe it was

reasonable for the trial court to conclude that granting contempt petitions and imposing sanctions for every technical violation of its orders would serve only to increase the animosity between Mother and Father, without any discernible benefit to C.M. We also note that Father benefitted from the trial court's circumspectness in this regard, as the trial court declined to impose sanctions against him for his failure to pay child support as ordered. When viewed in light of this fact, Father's insistence that Mother be sanctioned for contempt rings hollow. For all of these reasons, we cannot conclude that the trial court abused its discretion in declining to hold Mother in contempt.

3.

Finally, Father argues that the trial court abused its discretion in ordering him to pay a portion of Mother's attorney fees. Ind. Code Ann. § 31-14-18-2 (West, Westlaw current through 2012 2nd Reg. Sess.) permits the trial court to order a party to pay attorney fees in paternity actions. We review such an order for an abuse of discretion. *In re Paternity of McGuire-Byers*, 892 N.E.2d 187 (Ind. Ct. App. 2008), *trans. denied.* In determining whether to award attorney fees, the trial court must consider the resources of the parties, their economic conditions, their ability to engage in gainful employment and earn adequate income, and other factors that bear of the reasonableness of the award. *Id.* "'When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper.'" *Id.* at 193 (quoting *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 127 (Ind. Ct. App. 2004)), *trans. denied*.

Father argues there is insufficient evidence of the parties' financial conditions to

11

support the trial court's order that he pay $5,200 toward Mother's attorney fees. Specifically, he argues that because the trial court concluded that it had insufficient evidence before it to rule on Father's request to modify child support, it *ipso facto* had insufficient evidence before it to award attorney fees.

We cannot agree with Father's argument that the quantum of evidence concerning a party's financial condition required to support an award of attorney fees is the same as that necessary to support a modification of child support, and he has not directed our attention to any authority supporting that proposition. The Indiana Child Support Guidelines set forth a specific and detailed method for calculating child support obligations based on the parents' income. There is no similar formula for calculating attorney fee awards. While it is true that the trial court must consider the parties' relative financial conditions, it is enough if the evidence presented establishes that one party is in a better position to pay the fees. Moreover, it appears that the trial court withheld judgment on Father's petition to modify child support because it wanted to use Father's 2010 and 2011 income tax returns to ensure that Father was not underreporting his income, as Mother's counsel had suggested at the hearing. But even assuming Father was underreporting his income, the evidence presented at the hearing was more than sufficient to establish that Father was in a better position to pay the attorney fees. Mother has three young children, including C.M., and does not work outside the home. Father, on the other hand, owns two sporting goods stores and testified that he pays himself a biweekly salary of $800.

Father also argues that the attorney fee award was an abuse of discretion because "the

12

[r]ecord in the case at bar is devoid as to either parties' investments or savings or any other evidence which might establish their economic circumstances." *Appellant's Brief* at 15. As noted above, the record contained significant information regarding the parties' incomes. Father never argued before the trial court that Mother had significant savings or investments, and he cannot raise the argument for the first time on appeal. *See Whitfield v. State*, 699 N.E.2d 666 (Ind. Ct. App. 1998) (holding that arguments raised for the first time on appeal are waived and will not be considered on appeal), *trans. denied*. To the extent Father argues that evidence that Mother had managed to pay a significant portion of her attorney fees prior to the hearing establishes that an attorney-fee award was not warranted, the argument amounts to a request to reweigh the evidence, which we will not do on appeal. For all of these reasons, we cannot conclude that the trial court abused its discretion in awarding attorney fees.

Finally, Father cites *Deel v. Deel*, 935 N.E.2d 183 (Ind. Ct App. 2010), for the proposition that if he prevails on any of the issues raised in this appeal, we should also remand the attorney-fee award for reconsideration. In *Deel v. Deel*, the trial court made various errors that resulted in its conclusion that the father did not have an outstanding child support arrearage. *Id.* On appeal, this court concluded that Father had an arrearage of nearly $10,000 and remanded with instructions to correct the error and reconsider the mother's request for prejudgment interest. *Id.* This court also instructed the trial court to reconsider its attorney fee award to in light of these corrections. *Id.* The case at hand is readily distinguishable; because the only issue on which Father prevailed, the delegation of excessive

13

authority to the parenting-time coordinator, had no bearing on matters relevant to the determination of an attorney fee award, reconsideration of the award is not warranted.

Judgment affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and BRADFORD, J., concur.